**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JALD JENSEN,**<br>**Defendant.** | **Case No. 12-CR-000006-GKF** |

**Plea Agreement**

The United States of America, by and through Christopher J. Nassar United States Attorney for the Northern District of Oklahoma, and David D. Whipple, Assistant United States Attorney, together with William E. Schurmann, Assistant Chief, and Joel Crespo, Trial Attorney, of the Criminal Division, White Collar and Corporate Enforcement Section, Foreign Corrupt Practices Act Unit, and the defendant, JALD JENSEN, in person and through counsel, Robert Scott Williams, respectfully inform the Court that they have reached the following plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(A).

**1. <u>Plea</u>**

The defendant agrees to enter a voluntary plea of guilty to the following:

**COUNT ONE: 18 U.S.C. § 371 – Conspiracy**

as set forth in the Indictment in the instant case, Northern District of Oklahoma, and admits to being in fact guilty as charged in the count to which the defendant is pleading guilty.

**2. Waiver of Constitutional Rights**

The defendant understands that, by pleading guilty, the following constitutional rights will be relinquished:

a. the right to be indicted if proceeding by Information;

b. the right to plead not guilty;

c. the right to be tried by a jury, or, with the consent of the government, to be tried by a judge;

d. the right to an attorney at trial, including a court-appointed attorney if the defendant could not afford an attorney;

e. the right to assist in the selection of the jury;

f. the right to be presumed innocent, and to have the jury instructed that the government bears the burden to prove the defendant guilty beyond a reasonable doubt and by a unanimous verdict;

g. the right to confront and cross-examine witnesses against the defendant;

h. the right to testify on their own behalf and present witnesses in their defense;

i. the right not to testify, and to have the jury instructed that the decision not to testify could not be used against the defendant;

j. the right to appeal a guilty verdict to determine if any errors had been committed during trial that would require either a new trial or a dismissal of the charges;



Defendant's Initials

k. the right to have a jury determine beyond a reasonable doubt any facts that could increase any mandatory minimum or maximum sentence; and

l. any rights and defenses under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding, special or other assessment, and any order of restitution.

By pleading guilty, the defendant will be giving up all of these rights. By pleading guilty, the defendant understands that they may have to answer questions posed by the Court, both about the rights that the defendant will be giving up and the factual basis for the defendant's plea.

**3. Appellate and Post-Conviction Waiver**

In consideration of the promises and concessions made by the government in this plea agreement, the defendant knowingly and voluntarily agrees to the following terms:

a. The defendant waives rights under 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a) to directly appeal the conviction and sentence, including any fine, assessment, forfeiture, restitution order, term or condition of supervised release, or sentence imposed upon a revocation of supervised release; except that the defendant reserves the right to appeal from a sentence that exceeds the statutory maximum;

b. The defendant expressly acknowledges and agrees that the government reserves all rights to appeal the sentence;

c. The defendant waives the right to appeal from the district court's denial of any post-conviction motion to reduce the term of supervised release or probation under 18 U.S.C. §§ 3583(e)(1) or 3564(c); and

d. The defendant waives the right to collaterally attack the conviction and sentence under 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except for claims of ineffective assistance of counsel.



Defendant's Initials

The defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that the defendant understands his rights; and that the defendant knowingly and voluntarily waives those rights as set forth above.

JALD JENSEN

4. **Departure and Variance Waiver**

**a.** the **defendant shall not** request, recommend, or file a motion seeking a **departure downward** from the Guidelines range; and

**b.** the **defendant may** request, recommend, or file a motion seeking a **variance downward** from the Guidelines range pursuant to the § 3553(a) factors.

5. **Freedom of Information Act Waiver**

The defendant waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

6. **Rule 11 Rights Waiver**

The defendant knowingly and expressly waives all the rights afforded under Rule 11(f) of the Federal Rules of Criminal Procedure. Therefore, in any subsequent proceeding, including a criminal trial, the following shall be admissible against the defendant under Rule 801(d)(2)(A) of the Federal Rules of Evidence:



Defendant's Initials

a. A guilty plea which is later withdrawn or that the defendant seeks to withdraw;

b. The facts that the defendant has admitted under this plea agreement, as well as any facts to which the defendant admits in open court at the plea hearing, and any statement made in any proceeding under Rule 11 regarding this plea agreement; and

c. Any statement made during plea discussions with an attorney or agent for the government, or that were made pursuant to a proffer letter agreement, that resulted in a plea of guilty that is later withdrawn.

## 7. Payment of Monetary Penalties

a. *Enforcement*

1) The defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613.

2) The defendant understands and agrees that under 18 U.S.C. § 3613 any monetary penalties or restitution imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

3) The defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court.

4) The defendant agrees that any unpaid obligations will be submitted to the United States Treasury for offset, so that any federal payment or transfer of returned property the defendant receives may be applied to federal debts and will not be limited by a payment schedule.

5) The defendant agrees that any restitution debt may not be discharged in any bankruptcy proceeding.



Defendant's Initials

b. *Disclosure of Financial Information*

1) The defendant agrees to provide complete information regarding all victims potentially entitled to restitution.

2) The defendant agrees to provide truthful and complete financial information, as requested by the United States Probation Office for the preparation of the presentence report.

3) The defendant agrees to complete, under penalty of perjury, the required financial statement form not later than two weeks after the defendant enters a guilty plea. The defendant agrees to update any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

4) The defendant agrees to submit, before and after sentencing, to depositions and interviews regarding the defendant's financial status, as deemed necessary by the United States Attorney's Office.

5) The defendant authorizes the United States Attorney's Office to obtain the defendant's credit report. The defendant also agrees to provide waivers, consents, or releases, valid for 120 days after sentencing, to allow the U.S. Attorney's Office to access records to verify financial information.

6) The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

7) The defendant's failure to timely and accurately complete and sign the financial statement, and any necessary updates, may, in addition to any other penalty or remedy, constitute a failure to accept responsibility under U.S.S.G § 3E1.1.

**8. <u>Special Assessment</u>**

The defendant hereby agrees to pay the total Special Monetary Assessment ($100 per felony count) to the United States District Court Clerk at or before sentencing or as otherwise directed by the District Court.



JJ
Defendant's Initials

**9. Factual Basis and Elements**

The elements that the United States must prove beyond a reasonable doubt in order to convict under 18 U.S.C. § 371 are as follows:

a. An unlawful agreement between two or more individuals to violate the Foreign Corrupt Practices Act existed; specifically, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist defendant and his co-conspirators in obtaining and retaining business for and with, and directing business to, their employer and others;

b. The defendant knowingly and willfully entered that conspiracy;

c. One of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Indictment in the Northern District of Oklahoma;

d. The overt acts were committed to further some objective of the conspiracy; and

e. There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.



Defendant's Initials

The elements that the United States must prove beyond a reasonable doubt in order to convict under 15 U.S.C. § 78dd-2 are as follows:

a. The defendant was a domestic concern, or an officer, director, employee, or agent of a domestic concern;

b. The defendant acted corruptly and willfully;

c. The defendant made use of the mails or any means or instrumentality of interstate commerce in the Northern District of Oklahoma in furtherance of conduct that violates the FCPA;

d. The defendant offered, paid, promised to pay, or authorized the payment of money, or offered, gave, promised to give, or authorized the giving of anything of value;

e. The payment or gift at issue was to a foreign official, or was to any person while knowing that all or a portion of such money or thing would be offered, given, or promised (directly or indirectly) to a foreign official;

f. The payment or gift at issue was intended for at least one of four purposes:

   (1) to influence any act or decision of the foreign official in his or her official capacity;

   (2) to induce the foreign official to do or omit to do any act in violation of that official's lawful duty;

   (3) to secure any improper advantage; or

   (4) to induce that foreign official to use his or her influence with a foreign government or department, agency, or instrumentality thereof to affect or influence any act or decision of such government, department, agency, or instrumentality; and

g. The payment or gift was intended to assist the defendant in obtaining or retaining business for or with, or directing business to, any person or company.



Defendant's Initials

With regard to the factual basis required by Federal Rule of Criminal Procedure 11(b)(3), the defendant agrees and stipulates that there is a factual basis for the plea of guilty and relieves the United States of any further obligation to adduce such evidence.

The defendant, JALD JENSEN, admits to knowingly, willfully and intentionally committing or causing to be committed the acts constituting the crime alleged in Count One in the Indictment, and confesses to the Court that the defendant is, in fact, guilty of such crime.

I, JALD JENSEN, admit the following facts:

a. From December 2004 through March 2010, I was a regional sales manager of BizJet International Sales and Support, Inc. ("BizJet") which was based in Tulsa, Oklahoma and incorporated under the laws of Oklahoma. BizJet was a subsidiary of Lufthansa Technik AG ("LHT").

b. At all relevant times, BizJet was in the business of providing maintenance, repair and overhaul ("MRO") services to customers in the United States and to foreign customers. BizJet provided services to a number of customers in Latin America, including in Mexico and Panama. These foreign customers included aircraft owned and operated by the government. For example, BizJet provided MRO services to the air fleet for the Mexican President (the "Mexican President's Fleet"), the federal police in Mexico (the "Mexican Federal Police"), the air fleet for the Governor of the Mexican State of Sinaloa ("Sinaloa"), and the aviation authority in Panama (the "Panama Aviation Authority").

c. From December 2004 through March 2010, I conspired with, among others, Peter DuBois, the Vice President of Sales and Marketing at BizJet, Neal Uhl, the Chief Financial Officer at BizJet, and Bernd Kowalewski, the President and Chief Executive Officer of BizJet, to make payments to third party agents knowing that at least a portion of that money was going to be passed on to employees of existing and



JJ
Defendant's Initials

potential customers in order to obtain and retain MRO business with those customers. Those customers included foreign government agencies and instrumentalities, including the Mexican President's Fleet and the Mexican Federal Police.

d. I discussed in person, via telephone, and via electronic mail ("e-mail") with DuBois, Uhl, Kowalewski and others the competitive need to make bribe payments.

e. The payments to the employees of customers, including foreign government customers, were made either directly to the employees—via check, wire transfer or hand-delivered cash from BizJet—or were made indirectly to the employee through a third-party agent. When payments were made directly to the employees, I, together with others, provided instructions, either in person, over the telephone or via e-mail, to Neal Uhl as to the manner and means by which the bribe payments were to be paid—for example, whether the payments were to be made by check, wire or cash, and the names and locations of the bank accounts to which the bribe payments should be transferred. Uhl, together with others, then wired or caused the wiring of the bribe payments from MRO Company's bank account in New York to bank accounts in Oklahoma, California and elsewhere for the purpose of making payments to the foreign officials.

f. Beginning in 2005, Dubois, Uhl, Kowalewski, and I, in an attempt to conceal the bribe payments, decided to funnel many of these payments through a separate company, Avionica International & Associates, Inc. ("Avionica"), that I owned. I, on behalf of Avionica, submitted invoices to Bizjet for payment, and Uhl and others submitted a check or wire request for payment of the invoice. Once approved, BizJet mailed or wired the money to the bank account of Avionica, and I then either withdrew some or all of the money to hand-deliver it to the employees of the customer or transferred the money directly into the bank account of the employees of the customer. A number of payments to employees of foreign government customers, including the Mexican President's Fleet and the Mexican Federal Police, were made through Avionica.

g. Dubois approved many of the payments to employees of customers, including employees of foreign government customers, and arranged for the disbursement of money to me so that I could make the



[initials]
Defendant's Initials

payments to employees of customers, including employees of foreign government customers.

h. On or about November 9, 2006, I sent an e-mail to Dubois stating that BizJet needed to pay $2,000 in United States currency to an official from the Mexican President's Fleet. On or about that same day, Dubois forwarded the e-mail to Uhl and asked if Uhl could arrange to have the cash ready to give to me the following day. On or about November 10, 2006, Uhl responded to my e-mail and stated, "We don't have this in petty cash, but can go to the bank to make arrangements."

i. On or about October 30, 2007, I sent an e-mail to Dubois and Uhl with the subject, "Mex pres comm." In the e-mail, I stated, "I need to delivery [sic] the first comm. to Mex Pres, 30K. He, the Cor., ask to bring the .... this Thursday afternoon. I need your help. Thank you." (ellipses in original). On or about that same day, Uhl responded, "Are we to wire funds to your business account?" On or about that same day, I responded in an e-mail to Uhl, "Yes Sir. I don't have another choice. Thank you." On or about October 31, 2007, Uhl caused $30,000 to be wired from BizJet's bank account in New York to Avionica's bank account in California for the purpose of making a payment to officials employed by the Mexican President's Fleet in return for the officials' help in securing a contract for BizJet with the Mexican President's Fleet. On or about October 31, 2007, Uhl sent an e-mail to me, copying Dubois and others, and stated, "Please note that the $30k wire has been sent. Please confirm that you receive it. Thx." On or about October 31, 2007, I responded that I was on my way to Mexico with the United States currency meant for officials employed by the Mexican President's Fleet.

j. On or about October 27, 2009, I and another employee of BizJet submitted two check requests, one for $22,912.38 and one for $6,417.44, for payment to the Director of Air Services at Sinaloa for his help in securing business with Sinaloa. On or about October 27, 2009, Uhl caused two checks to be sent to the Director of Air Services in the amounts of $22,912.38 and $6,417.44

JALD JENSEN
Defendant

Date 10/29/26



Defendant's Initials

**10. Further Prosecution**

The United States shall not initiate additional criminal charges against the defendant in the Northern District of Oklahoma that, as of the date of the defendant's acceptance of this agreement, arise from its investigation of the defendant's actions and conduct giving rise to the instant Indictment. The defendant understands, however, that this obligation is subject to all "Limitations" set forth below, and that the United States Attorney's Office for the Northern District of Oklahoma is free to prosecute the defendant for any illegal conduct (*i.e.*, violation of federal criminal laws) not discovered by or revealed to the government before the date of this agreement or occurring after the date of this agreement.

**11. Dismissal of Remaining Counts**

If the Court finds the defendant's plea of guilty to be freely and voluntarily made and accepts the plea, then the United States will move, at the appropriate time, to dismiss the remaining counts in the instant case, if any, as to this defendant.

If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, any charges that have been dismissed may be reinstated or re-presented to a grand jury, and the government will be free to prosecute the defendant for all charges. Under these circumstances, the defendant waives any right to argue that the Double Jeopardy clause bars the defendant's federal prosecution, as well as any objections, motions, or defenses based upon the applicable statute of limitations, the



Defendant's Initials

Speedy Trial Act, or constitutional restrictions as to the timeliness of any renewed charges.

**12. <u>Acceptance of Responsibility</u>**

Provided the defendant clearly demonstrates acceptance of responsibility, the government agrees to recommend a two-level reduction in offense level pursuant to U.S.S.G. § 3E1.1. The government agrees to file a motion recommending that the Court grant an additional one-level reduction under U.S.S.G. § 3E1.1(b), if the defendant's Guidelines offense level qualifies him for such a reduction. The sentencing judge is in a unique position to evaluate the acceptance of responsibility, and the Court will ultimately decide whether to apply any § 3E1.1 reduction for timely acceptance of responsibility.

Any agreement to recommend an acceptance-of-responsibility reduction is contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the government. If the defendant (1) falsely denies, or makes conflicting statements as to, his involvement in the crime to which he is pleading, (2) falsely denies or frivolously contests conduct that the Court determines to be relevant conduct as defined in USSG § 1B1.3, (3) willfully obstructs or attempts to obstruct or impede the administration of justice as defined in USSG § 3C1.1, (4) perpetrates or attempts to perpetrate crimes while awaiting sentencing, or (5) advances false or frivolous issues in mitigation, the government expressly reserves



JJ
Defendant's Initials

the right to withdraw any recommendation regarding acceptance of responsibility without breaching the agreement.

**13. <u>Sentence</u>**

a. *Imprisonment*

The defendant acknowledges that under 18 U.S.C. § 371 the maximum statutory sentence is five years of imprisonment and a fine of not more than $250,000 or twice the pecuniary gain/loss caused by the defendant's acts.

b. *Supervised Release*

Additionally, the defendant is aware, if imprisonment is imposed, that the Court may include as part of the sentence a requirement that after imprisonment the defendant be placed on a term of supervised release of no more than three years. Violation of any condition of supervised release may result in revocation, or modification of the conditions, of supervised release, which may in turn result in additional incarceration consistent with 18 U.S.C. § 3583(e).

c. *Guidelines*

The defendant is aware that the Sentencing Guidelines are advisory. The Court, while not bound to apply the Sentencing Guidelines, must consult those Guidelines and take them into account when sentencing.

The defendant is further aware that the Court determines the sentence, that the Court has not yet done so, and that any estimate of the sentence – received from any source – is a prediction, not a promise. Regardless of any estimate the defendant has



Defendant's Initials

received, the Court has discretion to impose any sentence up to and including the statutory maximum.

**14. Stipulations**

The defendant and the United States agree and stipulate that the applicable Sentencing Guidelines range exceeds the statutory maximum sentence of 5 years imprisonment. Therefore, pursuant to U.S.S.G. Section 5G1.1(a), the applicable guideline sentence is five years imprisonment.

The above stipulations are contingent on the defendant not engaging in any additional criminal activity between defendant's change of plea and sentencing. Any additional criminal activity committed by the defendant during that time will constitute a breach of the plea agreement, will void the government's obligations under this paragraph to recommend any particular outcome in this case, and will not excuse the defendant from performing his obligations under this agreement.

Having been fully apprised by defense counsel of the right to seek compensation pursuant to Public Law 105-119, the defendant **WAIVES** any and all such right, and stipulates that defendant is not a "prevailing party" in connection with this case.

**15. Limitations**

This plea agreement shall be binding and enforceable upon the Office of the United States Attorney for the Northern District of Oklahoma and the Department of Justice, Criminal Division, White Collar and Corporate Enforcement Section, but in no way limits, binds or otherwise affects the rights, powers, duties or obligations



Defendant's Initials

of any state or local law enforcement agency, administrative or regulatory authorities, civil or administrative enforcement, collection, bankruptcy, adversary proceedings or suits which have been or may be filed by any governmental entity, including without limitation, the Internal Revenue Service, the Tax Division of the Department of Justice and the trustee in bankruptcy.

**16. <u>Breach of Agreement</u>**

In the event either party believes the other has failed to fulfill any obligations under this agreement, then the complaining party shall, in its discretion, have the option of petitioning the Court to be relieved of its obligations herein. The Court shall determine whether a party has completely fulfilled all its obligations under this agreement in an appropriate proceeding at which any disclosures and documents provided by either party shall be admissible and at which the complaining party shall be required to establish any breach by a preponderance of the evidence. If the Court determines that the defendant has breached the plea agreement, the government may declare this agreement null and void, and the defendant will be subject to prosecution for any criminal violation, including but not limited to any crimes or offenses contained in or relating to the charges in this case, as well as false statement, obstruction of justice, or any other crime committed by the defendant during this prosecution.

The defendant hereby **WAIVES** any right under Rule 11(d) and (e) of the Federal Rules of Criminal Procedure to withdraw from the guilty plea or this agreement, save



Defendant's Initials

and except if the Court determines that the government has breached the plea agreement as set forth above. If JALD JENSEN, after entry of a plea of guilty, unsuccessfully attempts to withdraw that guilty plea, the government may continue to enforce the agreement but will no longer be bound by any particular provision in this agreement, unless the Court determines that the government acted in bad faith to bring about the attempted plea withdrawal.



Defendant's Initials

**17. Conclusion**

No agreements, representations or understandings have been made between the parties in this case, other than those which are explicitly set forth in this plea agreement and the Plea Agreement Supplement that the United States will file in this case (as it does in every case, even if there are no additional terms) and none will be entered into unless executed in writing and signed by all of the parties.

SO AGREED:

Christopher J. Nassar
UNITED STATES ATTORNEY

David D Whipple ________ 10-29-2026 ________
DAVID D. WHIPPLE Dated
Assistant United States Attorney

Wm. E. S ________ 10-29-2026 ________
WILLIAM E. SCHURMANN Dated
JOEL CRESPO
Attorneys, Criminal Division
White Collar & Corporate Enforcement Section
Foreign Corrupt Practices Act Unit

________ 10/29/2026 ________
ROBERT SCOTT WILLIAMS Dated
Attorney for Defendant

J Jensen ________ 10/29/26 ________
JALD JENSEN Dated
Defendant



JJ ________
Defendant's Initials

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to sentencing which may apply to my case. No other promises or inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

JALD JENSEN
Defendant

10/29/26
Dated

I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements and I have fully explained to the defendant the provisions of those Guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

ROBERT SCOTT WILLIAMS
Counsel for the Defendant

10/29/2026
Dated



Defendant's Initials